**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALI AFKHAMI,** | |
| **Plaintiff,** | |
| **v.** | **No. 22-cv-2818-ZMF** |
| **UNITED STATES OF AMERICA,** *et al.*, | |
| **Defendants.** | |

## I.      INTRODUCTION

Plaintiff Ali Afkhami brought this action against Defendant Elroy Lewis Dennis, a contractor for the U.S. Department of Agriculture ("USDA"), and USDA. Plaintiff seeks to hold Dennis liable for negligently striking Plaintiff with a motorized cart. *See* Compl. ¶ 11., ECF No. 1. Plaintiff also seeks to hold USDA liable under the Federal Tort Claims Act ("FTCA"). *See id.* ¶ 1. USDA has moved to dismiss, or in the alternative, for summary judgment. *See* Def. Mot. to Dismiss 1, ECF No. 34. USDA argues that Plaintiff's complaint is barred by sovereign immunity. *See id.* For the reasons stated below, the Court GRANTS USDA's motion to dismiss.

## II.      BACKGROUND

On July 23, 2018, USDA contracted with CMI Management Inc. ("CMI") to provide locksmithing services for its facilities. *See* ECF No. 34-1 at 1. CMI was responsible for identifying qualified personnel for the locksmith position. *See id.* at 8. However, USDA retained the discretion to review and approve the proposed candidate's resume. *See* ECF No. 39-1 at 31:18–21.[1] The

---

[1] The Parties submitted deposition transcripts containing two sets of page numbers on each page. When citing to a deposition transcript, the Court relies on the page number appearing at the bottom center of each quarter-page.

contract between CMI and USDA provided that the contractor would "perform day to day locksmith duties," and "provide all necessary labor to perform . . . locksmith duties[.]" ECF No. 34-1 at 1–2. Ultimately, CMI was "responsible for managing and [o]verseeing the activities of all contractor personnel." *Id.* at 11–12.

CMI provided USDA with Dennis's resume and USDA approved his hiring. *See* ECF No. 39-1 at 31:18–21. CMI had no actual presence at the USDA building. *See id.* at 37:21–38:7. At any time, USDA could have requested that CMI remove Dennis from his position. *See id.* at 27:1–5.

Two USDA employees, Samuel Richardson and Walter Polainsky, supervised Dennis on a day-to-day basis. *See* ECF No. 39-2 at 17:12–20; 19:3–12; ECF No. 39-3 at 12:13–13:12. Richardson and Polainsky assigned Dennis's workdays and hours. *See* ECF No. 39-2 at 22:18–23:9. Richardson would review and approve Dennis's timesheets. *See* ECF No. 39-1 at 22:1–19. If Dennis needed to take time off, he would notify both Richardson and CMI. *See* ECF No. 39-2 at 23:10–24:5; ECF No. 39-1 at 19:4–14. Richardson and Polainsky assigned Dennis work orders, prioritized tasks for Dennis, and sometimes accompanied Dennis to repair sites. *See* ECF No. 39-2 at 15:10–22; 39:15–40:15. Richardson communicated with Dennis throughout the day via walkie talkie and text and at times would meet Dennis to discuss the work required for a particular order. *See* ECF No. 39-3 at 18:9–15; 28:12–19; 29:5–19. Neither Richardson nor Polainsky would "physically go out and help [him] do the job," or "tell [him] how to fix a lock." ECF No. 39-2 at 39:10–40:15.

USDA furnished Dennis with the tools and equipment required to perform his job, which were kept in the USDA locksmith shop. *See id.* at 21:12–22:2. The contract between CMI and

2

USDA stated that CMI was responsible for all "maintenance and repair of Government Furnished Equipment (GFE)." ECF No. 34-1 at 2.

USDA also furnished Dennis with a motorized cart to travel throughout the job site. *See* ECF No. 39-2 at 32:1–33:6; 34:1–9. USDA trained Dennis on how to use the cart. *See id.* at 32:1–33:6; 34:1–9. Dennis was free to use the cart whenever he considered it necessary. *See id.* at 38:10–16. To that end, the keys to operate the cart remained in it. *See id*.

On October 24, 2019, Dennis was driving the cart to a USDA building to complete a maintenance job. *See id.* at 31:5–14; 36:5–10. While doing so, he struck Plaintiff. *See id*.

On September 16, 2022, Plaintiff filed a complaint against Dennis and the United States of America. *See* ECF No. 1. Plaintiff alleges that Dennis and USDA breached duties of care under the FTCA. *See id.*

## III.    LEGAL STANDARD

"Sovereign immunity shields the federal government from suit and is 'jurisdictional in nature.'" *Gray v. United States*, No. 21-cv-2310, 2022 WL 3758577, at *2 (D.D.C. Aug. 30, 2022) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). When sovereign immunity applies, a court must dismiss the suit for lack of subject-matter jurisdiction. *See United States v. Orleans*, 425 U.S. 807, 813–14 (1976).

USDA raises sovereign immunity both through a motion to dismiss under Rule 12 and, in the alternative, through a motion for summary judgment under Rule 56. *See* Def. Mot. to Dismiss at 8–10 (citing Fed. R. Civ. P. 12(h)(3); 56(a)). "Summary judgment, however, represents a decision on the merits, which courts may render only after jurisdiction has been established." *Kirkham v. Societe Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005) (citing *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987) ("Seeking summary judgment on a jurisdictional issue . . . is

the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur.")). "For this reason, parties seeking [FTCA] immunity do so through Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction." *Kirkham*, 429 F.3d at 291. Accordingly, the Court will treat Defendant's motion as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[2] *See id.*

The plaintiff bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In considering whether it has jurisdiction, a court must accept "the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)). A court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. (quoting *Herbert*, 974 F.2d at 197).

## IV.     DISCUSSION

The United States waives sovereign immunity under the FTCA for certain torts committed by "employee[s] of the Government while acting within the scope of [their] office or employment." *Orleans*, 425 U.S. at 813 (quoting 28 U.S.C. § 1346(b)). "[E]mployee of the government" includes "officers or employees of any federal agency" but specifically excludes "any contractor with the United States." 28 U.S.C. § 2671. Accordingly, courts "routinely hold that the United States cannot be sued where the alleged duty of care has been delegated to an independent contractor." *Hsieh v.*

---

[2] Defendant USDA styled their motion as a motion to dismiss under Rule 12(h)(3). "A motion styled as one under Rule 12(h)(3) is treated in the same way as a motion to dismiss for lack of subject-matter jurisdiction under" Rule 12(b)(1). *Ams. for Fair Treatment v. U.S. Postal Serv.*, 663 F. Supp. 3d 39, 49 (D.D.C. 2023).

*Consol. Eng'g Servs.*, 569 F. Supp. 2d 159, 176 (D.D.C. 2008). This is known as the "independent contractor exception" *Orleans*, 425 U.S. at 814.

However, the exception does not always apply. "The federal government may be liable for the negligence of its contractor." *Gray,* 2022 WL 3758577, at *2 (citing *Orleans*, 425 U.S. at 815). "[C]ourts evaluate the level of control that the United States exercises over the contractor" to determine if the exception applies. *Gray,* 2022 WL 3758577, at *2 (citing *Hamilton v. United States*, 502 F. Supp. 3d 266, 274 (D.D.C. 2020); *Verizon Washington, D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 216 (D.D.C. 2017)).

"[C]ourts have allowed the government extensive flexibility in the amount of supervision it exerts over a contractor before it will deem that contractor an agent and its acts the acts of the United States." *Cooper v. U.S. Gov't & Gen. Servs. Admin.*, 225 F. Supp. 2d 1, 4 (D.D.C. 2002). For example, the government "may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Macharia v. United States*, 334 F.3d 61, 68–69 (D.C. Cir. 2003) (quoting *Orleans*, 425 U.S. at 816). Furthermore, "[i]f the contractor manages the daily functioning of the job, with the federal actor just exercising broad supervisory powers, the contractor is likely an independent contractor." *Hsieh*, 569 F. Supp. 2d at 176–77.

On the other hand, courts have declined to apply the independent contractor exception where the government exercises substantial supervision over a contractor's day-to-day operations and controls the way the contracted work is performed. *See Logue v. United States*, 412 U.S. 521, 527–28 (1973); *Orleans*, 425 U.S. at 814–15. Consistent with that principle, courts ask whether the government directed how the contractor performed its work, as opposed to merely supervising

the results of that work. *See Cannon v. United States*, 645 F.2d 1128, 1138–39 (D.C. Cir. 1981); *Hsieh*, 569 F. Supp. 2d at 176–77.

A.    The Contract

"Courts in this circuit regularly analyze government contracts to determine if the independent contractor exception applies." *Gray,* 2022 WL 3758577, at *2. Contract language that establishes government control of "day-to-day operations," or "detailed physical performance" overcomes the independent contractor exception. *Logue*, 412 U.S. at 528; *Orleans*, 425 U.S. at 815.

The contract between USDA and CMI assigned CMI responsibility for all tasks and overall management of CMI's employees. *See* ECF No. 34-1 at 1–2. The contract states that "[CMI] will be directly responsible for ensuring the accuracy, timeliness and completion of *all* tasks assigned under the contract," will "manag[e] and [o]versee[] the activities of all contractor personnel . . . in the performance of this contract," and "[p]rovide *all* necessary labor to perform . . . locksmith duties." ECF No. 34-1 at 1–2, 12 (emphasis added).[3]

These provisions closely mirror contract terms where courts applied the independent contractor exception. In *Verizon*, the independent contractor exception applied because the contract assigned the contractor "full responsibility for . . . management and supervision of

---

[3] Separately, Plaintiff argues that USDA waived the independent contractor exception by hiring Dennis to fill a role that had traditionally been performed by a USDA employee. *See* Pl's Reply 12, ECF No. 39. But the independent contractor exception does not disappear "simply because [the contractor is] performing tasks that would otherwise be performed by salaried employees of the Government." *Logue*, 412 U.S. 531–32 (1973). Nor is it relevant that USDA had the power to hire or fire Dennis. "The federal government's ability to 'hire' or 'fire' contractors[] does not speak to whether it is supervising such contractors' performances on a day-to-day basis." *Singh v. S. Asian Soc'y of George Washington Univ.*, 572 F. Supp. 2d 1, 9–10 (D.D.C. 2008) (citing *Cooper v. United States*, 225 F.Supp.2d 1, 4 (D.D.C.2002).

maintenance, minor repairs, inspections, and housekeeping." 254 F. Supp. 3d at 216. Similarly, in *Hsieh*, the independent contractor exception applied where the contract provided that the contractor was "responsible for the day-to-day inspection and monitoring of all [c]ontractor work performed to ensure compliance with contract requirements." 569 F. Supp. 2d at 177. Accordingly, the contract language here does not establish government control of "day-to-day operations," or "detailed physical performance" of CMI's employees. *Logue*, 412 U.S. at 528; *Orleans*, 425 U.S. at 815. Indeed, the contract provides USDA "no authority to physically supervise the conduct" of CMI's employees. *Logue*, 412 U.S. at 528 (finding that where the contract did not authorize government supervision of the contractor's work, the independent contractor exception applied); *see* ECF No. 34-1 at 1–2. Thus, as in *Verizon* and *Hsieh*, the independent contractor exception applies here.

Plaintiff responds that the independent contractor exception should not apply because USDA supplied Dennis with locksmithing tools and a motorized cart. *See* Pl's Reply at 11. But that is not dispositive. The independent contractor exception applies so long as the contract required CMI to "[m]ake all repairs, minor and major, to government-owned equipment." *Cooper*, 225 F. Supp. 2d at 4 (finding that the independent-contractor exception applied where the government supplied cafeteria equipment, including stoves and ovens, but the contractor bore sole responsibility for all maintenance and repairs). In fact, it did. The contract provided that CMI was responsible for all "maintenance and repair of Government Furnished Equipment (GFE)." ECF No. 34-1 at 2. Because CMI remained responsible for maintaining the USDA provided equipment, the independent contractor exception still applies. *See Hockman v. United States*, 741 F. Supp. 5, 7 (D.D.C. 1990).

B.    The Conduct

Courts also examine the actual relationship between the government and the contractor. *See Cannon*, 645 F.2d at 1137–41. The key question is whether the government controlled the "detailed physical performance" of the contractor's work. *Orleans*, 425 U.S. at 814–15. The government controls a contractor's detailed physical performance when the government directs how the contractor performs the work on a day-to-day basis, including the way assigned tasks are carried out. *See Logue*, 412 U.S. at 527–28; *Orleans*, 425 U.S. at 814–15. By contrast, the government's assignment of work, establishment of priorities, inspection of completed work, or enforcement of contractual requirements does not amount to control of the contractor's detailed physical performance. *See Orleans*, 425 U.S. at 815.

Plaintiff contends that USDA controlled the detailed physical performance of Dennis's work because USDA employees "directed and controlled Defendant Dennis' daily work activities." Pl's Reply at 10. Specifically, Plaintiff points to USDA providing Dennis with a key card, assigning him daily tasks through a USDA computer system, and maintaining "constant contact" with Dennis throughout the workday. *Id*. at 11. However, these facts are insufficient to overcome the independent contractor exception.

First, the government's assignment of work tickets to a contractor does not establish the control necessary to overcome the independent contractor exception. *See* Gray, 2022 WL 3758577, at *3 (applying the exception because the government's authority to submit work requests did not demonstrate that the government had a duty to "take the lead" in the contractor's duties because the contract still delegated "management [and] supervision" to the contractor). Second, prioritizing a contractor's tasks through direct communication also does not overcome the exception. *See Verizon*, 254 F. Supp. 3d at 215–17. In *Verizon*, the independent contractor exception applied even

though the contractor "coordinate[d]" with the government to prioritize maintenance tasks. *Id.* at 217. The court in *Verizon* emphasized that the agreement between the contractor and the government "call[ed] for close coordination" and authorized the government to "re-prioritize the contractor's [] work when doing so [was] in the best interest of the Government." *Id.* Nonetheless, those facts "clearly [did] not constitute supervision of 'day-to-day operations . . . by the federal government,'" nor did they establish that "the federal government 'control[led] the detailed physical performance of the contractor.'" *Id.*

The supervision Richardson and Polainsky exercised over Dennis was no greater than the supervision found insufficient in *Verizon*. Dennis "sp[oke] with [Richardson and Polainsky] to find out what needed to be done[.]" ECF No. 39-2 at 28:11–14. And Richardson and Polainsky occasionally escorted Dennis to job sites. *See id.* at 28:15–29:8. However, Richardson and Polainsky did not "physically go out and help [Dennis] do the job," nor did they "tell [Dennis] how to fix a lock." *Id.* at 39:15–40:4. Richardson's and Polainsky's involvement was limited to assigning work and monitoring its completion, rather than directing the manner in which Dennis performed his tasks. That level of oversight falls within the type of "broad supervisory" role permitted within the exception. *Hsieh*, 569 F. Supp. 2d at 176–78 (holding that assigning government personnel responsibility for the "direct supervision and execution of [contractor's] maintenance and repair work" did not establish government control over the contractor's detailed physical performance); *see also Singh*, 572 F. Supp. 2d at 10 (holding that government approval of a contractor's security plans did not establish control over the contractor's detailed physical performance). At bottom, government employees may oversee, inspect, and coordinate a contractor's work without exercising the type of control necessary to defeat the independent contractor exception. Indeed, "courts have consistently held, based on the Supreme Court's

decision in *Orleans*, that the government may . . .  supervise or inspect the work of the contractor 'without vitiating the independent contractor exception.'" *Norton v. United States*, No. 21-cv-724, 2025 WL 2970475, at *7 (D.D.C. Oct. 22, 2025) (quoting *Hsieh*, 569 F. Supp. 2d. at 177).

Plaintiff also points to the fact that USDA provided Dennis with the cart involved in the accident and trained him to operate it. *See* Pl's Reply at 11–12. But those facts do not establish that USDA controlled the "detailed physical performance" of Dennis's operation of the cart. *Orleans*, 425 U.S. at 815. In fact, USDA left the cart's use largely to Dennis's discretion. Dennis had an electronic keycard granting him access to the USDA building where the cart was parked. *See* ECF No. 39-2 at 24:6–25:2. Because Dennis had his own keycard, he did not depend on USDA employees to gain access to the building or the cart, allowing him to enter and exit the facility— and retrieve and use the cart—as he deemed appropriate. Further, USDA left the cart keys in the ignition. *See id.* at 38:10-16. This allowed Dennis to use the cart whenever he deemed it necessary. *See id.* Consistent with that arrangement, USDA did not dictate when Dennis could use the cart. *See id.* at 34:1–9; 34:17–20; 35:21–36:3. Thus, rather than controlling the manner and timing of Dennis's operation of the cart, USDA afforded Dennis independent access to, and discretion over, its use. That level of autonomy is indicative of an independent contractor relationship. *See Cupit v. United States*, 964 F. Supp. 1104, 1108 (W.D. La. 1997) (holding that there was sufficient evidence that the government controlled the "detailed, physical performance" of a contractor because, among other things, the contractor lacked independent access to the building and relied on government employees to let him into secured areas, thereby allowing the government to dictate when he performed his work).

C.  Plaintiff's Notice of Dennis's Status as a Contractor.

Finally, in response to USDA's motion to dismiss, Plaintiff suggests in passing that USDA failed to timely notify him it would argue that Dennis was an employee of a government contractor. *See* Pl's Reply at 7. That attempt to shift responsibility is unavailing. USDA put Plaintiff on notice when USDA raised the issue as an affirmative defense in its answer to Plaintiff's complaint. *See* Def. Answer 4, ECF No. 10 ("The Court lacks subject matter jurisdiction over claims of negligence asserted against an independent contractor of the United States."). Upon reviewing USDA's answer, Plaintiff could have sought leave to amend his complaint and name CMI or any other party as a defendant, but he did not do so. Whatever the reason for that omission, it cannot be attributed to USDA.

## V.  CONCLUSION

Plaintiff's claim against USDA is dismissed with prejudice for lack of subject matter jurisdiction.

Date:   June 30, 2026

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

11